1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

TOKIO MARINE AND FIRE INSURANCE
COMPANY,

No. C04-5449RBL

11

Plaintiff,

12

v.

13
14

AUTO WAREHOUSING COMPANY, a
Washington corporation,

15

Defendant.

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO QUASH SUBPOENAS
DUCES TECUM

16

17      THIS MATTER is before the Court upon Defendant Auto Warehousing Company's (AWC)

18  Motion to Quash Subpoenas Duces Tecum served by Plaintiff Tokio Marine Fire and Insurance Company

19  (Tokio Marine) on Chubb Group of Insurance Companies (Chubb Insurance) and insurance brokerage firm

20  of Rogers and Norman.  Having considered the entirety of the records and file herein, including the instant

21  motion, response and reply, the Court finds as follows:

22                                      **Background**

23      Tokio Marine's insured, American Suzuki, suffered losses between August 10, 2000 and October

24  20, 2003 when at least 34 Suzuki vehicles stored at AWC's facility were damaged.  Tokio Marine, the

25  insurer, paid Suzuki's claims arising from the damages.  Tokio Marine now seeks subrogation from AWC

26  under a theory of breach of contract.

27      As part of its discovery process, Tokio Marine has served subpoenas duces tecum on Rogers and

28  Norman, AWC's insurance broker, and the Chubb Group of Insurance Companies, AWC's insurer.  Both

Chubb Insurance and Rogers and Norman are non-parties to the instant action.  These subpoenas require

ORDER

1 the respective records custodians of those served to appear at a designated time and place for purposes of

2 taking their depositions.  The subpoenas further request that the respective records custodians produce:

3  Any and all documents relating to the negotiations, issuance, claims or underwriting of any

4  and all policies issued to Auto Warehousing Co. Inc. that provided for coverage for the

5  facility located at 11621 Mount Elliott, Detroit, MI 48212 from January, 2000 through

6  December, 2004, whether or not generated by [the entity served] or its subsidiaries.

7 The subpoenas then goes on to give an extensive list of what is considered a document for purposes of the

8 discovery request.

9   AWC opposes these subpoenas and related requests for production of documents and seeks a

10 protective order quashing these lines of discovery for good cause shown.

**Analysis**

12   The question of whether a protective order should be granted entails a two step process.  *See Wood*

13 *v. McEwen*, 644 F.2d 797 (9th Cir. 1981). First, the party (or non-party) seeking the order has the burden

14 of showing good cause for granting the protection sought.  Second, after a party has met the good cause

15 requirement, the Court must balance the interest in allowing the discovery against the burdens that

16 compliance with the discovery would impose.

17   **1. Good Cause Requirement.**

18   To establish good cause, the movant must demonstrate a clear and specific need for the protection

19 sought.  *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also Foltz v. State Farm*

20 *Mut. Auto Ins.*, 331 F.3d 1122, 1130 (9th Cir. 2003).  In the instant case AWC asserts that good cause

21 exists because the information sought through the contested discovery is outside the scope of permissible

22 discovery, not relevant, and violates attorney-client privilege and/or the work product doctrine.  The Court

23 briefly addresses each of these grounds and Tokio Marine's responses.

24   **a) Scope**

25   AWC contests the production of information sought by Tokio Marine through its subpoenas as

26 exceeding the scope of discovery permissible under rule 26(b).  AWC argues that discovery relating to

27 liability insurance is limited to the inspection and copying of the insurance agreement.  AWC affirms that it

28 has met this production obligation by providing Tokio Marine with copies of its insurance policy, the

declaration of the policy, and a certificate of liability insurance.  AWC argues that any further discovery of

ORDER

1   insurance information would damage its privacy interest and result in the creation of a wedge between

2   AWC, its insurer and its insurance broker.  For support, AWC relies on the wording of rule 26(a),

3   inferences derived from Advisory Committee notes to rule 26(b)(2), and various case law.

4         The Court finds that there is nothing in the language of the rules, the related Advisory Committee

5   notes, or cases cited that recommends an interpretation of the rules to impose the essentially per se

6   restrictions on discovery of insurance documents for which AWC argues.  The Advisory Committee note

7   relied on by AWC expresses some concern for the privacy interest of insured, but the committee addresses

8   this concern in the same note by excluding insurance application information from mandatory disclosure.

9   Absent an expressed intent to the contrary either in the rules or related Advisory Committee notes,  the

10  means for determining whether discovery of particular insurance documents is permissible remains the

11  standard of relevance articulated in 26(b)(1).  *See Simon v. G.D. Serale and Co.*, 816 F.2d 397, 404 (8th

12  Cir. 1987) (holding that the 1970 amendment does not bar discovery of insurance documents under

13  provisions of 26(b)(1)).  Accordingly, the Court finds that discovery of insurance documents is generally

14  within the permissible scope of discovery so long as such discovery meets the relevance requirements of

15  Rule(26)(b)(1), and does not violate any privilege, protection or otherwise implicate rule 26(b)(2)

16  provisions disfavoring discovery.

17         **b) Relevance.**

18         Both parties agree that a central issue in this action is who, under the terms of the contract between

19  the plaintiff's insured, Suzuki, and the defendant, AWC, is liable for the losses resulting from the theft and

20  vandalism of vehicles at AWC's Detroit facility.  AWC argues that the discovery sought by Tokio Marine

21  through the subpoenas duces tecum does not go to this issue.  Tokio Marine argues that AWC's

22  "treatment of underlying vehicle losses vis a vis its liability insurer," is relevant because it will tend to

23  establish a course of actual performance and prior dealing on the part of AWC.  To this end, Tokio Marine

24  cites California law that allows for the introduction of evidence relating to the course of performance of a

25  contracting party for the purpose of explaining or supplementing  the written terms of a contract.  Cal.

26  Code Civ. Proc. § 1856 (Tokio Marine goes on to reference the official comments to the rule which state

27  "the course of actual performance by the parties is considered the best indication of what the parties

28  intended the writing to mean.")  Additionally, Tokio Marine argues  that the information it seeks is

relevant because any claims submitted by AWC to its insurer for the thefts and vandalism that occurred at

ORDER

1  its Detroit facility are evidence that AWC acknowledged responsibility for the related losses.

2      The Court does not foreclose the possibility that some portion of the information sought by Tokio

3  Marine  might prove marginally relevant for the purposes given.  However, the discovery sought by Tokio

4  Marine is extensive in both form and subject matter.   AWC argues, and the Court is inclined to agree, that

5  Tokio Marine's request essentially implicates production of the complete file materials of AWC's insurer

6  and insurance broker, including claim files.  The discovery request does not distinguish between documents

7  relevant to the actual losses and contractual obligations underlying this action versus materials concerning

8  unrelated losses and business practices or transactions.  The Court finds that this discovery request goes

9  too far.  Information that is not relevant to the losses or contractual obligations underlying this action are

10  too remote to be deemed discoverable.

11      To the extent that a subset of the information requested by Tokio Marine is discoverable, it is

12  dependent on attenuated inference to a degree that, at best, makes the information sought relevant to the

13  subject matter of the action and not the claims or defenses of the parties.   There is no absolute right to

14  discovery of information relevant to subject matter.  When such discovery is sought, as with motions for

15  protection, it must be for good cause, and the potential benefit of the requested discovery must be balanced

16  against other factors such as the burden and expense of complying with the discovery request, the

17  availability of the relevant information from other sources, as well as the extent to which information

18  sought is protected by privilege.

19                         **c) Privilege and Work Product**

20      Generally, the Court favors broad discovery balanced by a broad application of privilege and work

21  product doctrines.  The Court believes that for reasons of public policy, claims of privilege and work

22  product protection are not easily overcome by a third party with regard to an insurer's claim files that

23  relate to a loss which is pertinent to the action for which discovery is sought. Therefore, the Court finds

24  some merit to AWC's argument that allowing routine discovery of such claim files might cause the insured

25  to resist making full and necessary disclosure to it insurer. *See Lectrolarm Custom Systems*, 212 F.R. D.

26  567, 570-71 (E.D. Cal. 2002) (holding that expectations of confidentiality are reasonable with regard to

27  information that an insurer requires the insured to divulge for purposes of filing an insurance claim.)

28

ORDER

1    In the instant case, AWC argues that Tokio Marine's discovery request implicates information

2    protected by privilege and/or work product doctrine.  In making this argument, AWC asserts that

3    compliance with Tokio Marines discovery request would necessitate turning over the entire insurance file

4    including discussions regarding the relative positions, opinions, mental impressions, and other work

5    product that it claims are protected by work product.  Tokio Marine argues that this is tantamount to

6    AWC asserting a blanket claim of privilege for all insurance documents not already produced.  To the

7    extent that AWC is attempting to assert a blanket claim of privilege for all insurance documents, the Court

8    holds that such an assertion is not proper.  However, the Court does not understand this to be the claim

9    AWC is asserting.. Rather, the Court understands AWC to assert a claim that all documents that were

10   prepared in anticipation of litigation, whether by an attorney or non-attorney are protected as work

11   product. *See Heidebrink v. Moriwaki*, 706 P.2d 212 (WA 1985)   This is not a novel standard, and it is the

12   standard the Court applies in the instant case.

13   Tokio Marine also cites to *Heidebrink* for the proposition that privilege does not automatically

14   attach to insurance documents even though they may be included in the claim file of the insurer.  *Id*. at 216.

15   The Court agrees with this conclusion as well.  However, the *Heidebrink* decision goes on to hold, and this

16   Court concurs, that the best approach to determine if a particular document is privileged is "to look to the

17   specific parties involved and the expectation of those parties."  *Id*.  The Court believes that this approach

18   can be applied with equally satisfactory results to a class of documents which share a common genesis.  In

19   the instant case, the Court takes judicial notice of the sophisticated business relationship that gave rise to

20   this action and the assertion by AWC that there has been no reservation of rights between AWC and its

21   insurer regarding this action.  Accordingly, the Court concludes that there is sufficient bases to allow AWC

22   to assert privilege for those documents contained in or related to the insurer's claim file to the extent they

23   were prepared after the onset of the losses underlying this action (August 10, 2000).

24   Apart from determining which privilege attaches to which documents, Tokio Marine raises the

25   related issue of what constitutes appropriate disclosure of privileged documents within a party's privilege

26   log. Tokio Marine relies on *Fiduccia v. United States Dept. of Justice*, 185 F.3d 1035, 1043-44 (9th Cir.

27   1999) to assert that such disclosures must be sufficient to allow the party requesting discovery to make an

28   "intelligent judgement" about contesting the asserted privilege for any particular document.  The Court

agrees with this standard.  The Court also finds merit in Tokio Marine's complaint that AWC's privilege

ORDER

1    log fails to meet this standard.  As such, the Court instructs AWC to update its privilege log to reflect all

2    documents for which privilege is asserted, the type of document, a brief description of the document's

3    subject matter, the name(s) of those preparing the document, their relationship to the document, and the

4    specific privilege asserted for each document.

5         **2. Balance of Interest**

6         Having found that the claim files of the AWC's insurer, along with related documents, are

7    presumed privileged, the Court now turns to what remains subject to discovery under the subpoenas issued

8    by Tokio Marine to Chubb Group of Insurance Companies and the insurance brokerage firm of Rogers and

9    Norman.  Tokio Marine has asserted that its purpose for seeking the requested discovery is to establish

10   AWC's understanding of the terms of the contract between AWC and American Suzuki as relates to issues

11   of liability.  Tokio Marine has cited to applicable California statutes permitting the use of evidence on

12   course of dealings and course of performance to establish the meaning of the written terms of a contract.

13   The likelihood that the discovery Tokio Marine seeks might produce or otherwise lead to such admissible

14   evidence is marginal, but it is not so remote as to render the discovery sought impermissible.  Finally,

15   Tokio Marine has given AWC's refusal to produce any insurance documents other than copies of its

16   insurance policy, the declaration of the policy, and a certificate of liability insurance as the reason

17   necessitating this particular avenue of discovery.  Therefore, the Court finds that Tokio Marine has

18   established a sufficient showing of good cause to permit discovery to proceed as relates to unprivileged

19   documents concerning AWC's insurance.  The next step is to determine whether the good cause outweighs

20   the burden that discovery would impose.

21        AWC's argument that the information Tokio Marine seeks to discover is likely obtainable through

22   other means, including presently scheduled depositions, is well taken.  Nevertheless, Tokio Marine's

23   discovery requests are addressed to non-parties who have not objected to complying with the requests.  As

24   such, the Court cannot find that production of the insurer's underwriting file and related, unprivileged

25   documents would create an undue burden or cost for AWC.  Accordingly, the Court is not inclined to

26   grant AWC's motion to quash discovery as it pertains to the insurer's underwriting files for AWC's

27   Detroit facility, or as it pertains to related documents generated prior to the date of the underlying losses in

28   this action (August 10, 2000) which are unprivileged and not otherwise protected.  Therefore, it is hereby

ORDER

1    1. ORDERED that Defendant Auto Warehousing Company's  Motion to Quash Tokio Marine Fire

2  and Insurance Company's Subpoenas Duces Tecum on Chubb Group of Insurance Companies and the

3  insurance brokerage firm of Rogers and Norman is

4    DENIED in as much as it relates to insurance underwriting files for Auto Warehousing Company's

5  Detroit facility as well as any related, unprivileged or unprotected documents generated prior to the

6  underlying losses in this action (August 10, 2000);

7    GRANTED inasmuch as the information sought relates to Auto Warehousing Company's  insurer's

8  claim files maintained in relation to the underlying losses in this action, as well as any related,  privileged or

9  protected documents that were generated after the occurrence of underlying losses in this action (August

10  10, 2000).

11    2. ORDERED that Auto Warehousing Company update its privilege log in accordance with the

12  findings and instructions set forth in this order.  If either party desires to challenge the status of a document

13  for which  an assertion of privilege is made, it may do so by making an appropriate motion to compel

14  production.

15    3. ORDERED that the parties make a good faith effort amongst themselves to resolve any

16  ambiguities as to whether a particular document is protected from discovery under this order.

17  HOWEVER, either party may request clarification from the Court should the question remain unresolved

18  after making such a good faith effort.

19

20    DATED this 24th day of June, 2005.

21

22

23

24    _____

25    RONALD B. LEIGHTON
      UNITED STATES DISTRICT JUDGE
26

27

28

ORDER